<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THE HEREROS, et al.,

                        Plaintiffs,

         vs.                               Civil Action No. 05-1872 (KSH)

DEUTSCHE AFRIKA-LINIEN GMBLT &
CO.,

                        Defendant.                  <u>OPINION</u>

<u>KATHARINE S. HAYDEN, U.S.D.J.</u>

Before the Court is the defendant's motion to dismiss plaintiffs' complaint on a variety of legal grounds.

**BACKGROUND**

According to the complaint filed in this District, the plaintiffs are members of the Herero tribe in the Republic of Namibia, which is located in Africa.  They seek relief "as a consequence of the genocidal destruction of the Herero Tribe." (Compl. ¶ 3.)  The defendant Woermann Line, a German corporation, is a shipping line that engages in and transacts business in New Jersey and is now known as Deutsche Afrika-Linien.  (Herein, plaintiffs will be referred to as "the Herero," and defendant as "Woermann.")  According to the complaint, between 1890 and 1915,

Woermann was the principal shipping and port activities entity in German South Africa and in

pursuing its commercial activities, it enslaved and perpetrated atrocities upon the Herero.

> Woermann brutally employed slave labor and ran its own concentration
> camp.  Woermann was a critical participant in the German colonial
> enterprise.  Individually and as a member of that enterprise, Woermann is
> directly responsible for and committed crimes against humanity
> perpetrated against the Herero.

(Compl. ¶ 6.)

The Herero have pressed their claims previously against Woermann and another

corporate defendant, Deutsche Bank, in a lawsuit filed in 2001 in the Superior Court of the

District of Columbia, which was removed to federal court and dismissed on grounds discussed

*infra*.  While that D.C. federal action was pending, the Herero filed a similar lawsuit against

Woermann and Deutsche Bank in the Southern District of New York, which was voluntarily

dismissed as to Woermann for lack of personal jurisdiction.  This lawsuit in the District of New

Jersey against only Woermann followed.  Woermann relates in its brief that in the Southern

District,  Judge Robert Carter has before him Deutsche Bank's motions to dismiss and to obtain

Rule 11 sanctions. (Defendant's Moving Brief at 1-2.)

**BASIS OF THE PENDING MOTION**

Woermann has brought a motion to dismiss this lawsuit on grounds that (1) the claims of the

Herero are barred by the applicable statute of limitations; (2) the claims are also barred by *res*

*judicata* and/or collateral estoppel because they are virtually identical to the ones pleaded in the

D.C. lawsuit; (3) these plaintiffs lack standing; (4) the claims are "non-justiciable," raising issues

of foreign policy and eluding judicially manageable standards for determining the merits or

affording relief for what could be a putative class of 125,000 people; and (5) the complaint fails

to state a claim upon which relief can be granted.

**DISCUSSION**

Because the past litigation between these parties is of some moment to the arguments raised here, the Court will initially address the argument that federal claim preclusion bars this lawsuit.

Are the Claims Barred by Doctrines of *Res Judicata*/Collateral Estoppel?

Woermann's argument on this basis requires an examination of D.C. District Court Judge Colleen Kollar-Kotelly's memorandum opinion, which dismissed the Herero's complaint against Deutsche Bank for failure to state a claim, and the decision of the D.C. Circuit affirming the dismissal.

Procedurally, by the time the district court in the District of Columbia ruled on the motion to dismiss, which had been raised by both Woermann and Deutsche Bank, Woermann was out of the case because it had successfully argued lack of personal jurisdiction. Woermann did, however, join in all the substantive grounds for dismissal.

In her rulings, Judge Kollar-Kotelly found that the requirements of subject matter jurisdiction had been met for purposes of reaching the merits of the motion to dismiss, and that the individual plaintiff members of the Herero tribe had standing, at least at the pleading stage of the lawsuit. But she held that the plaintiffs had failed to plead a valid cause of action. The complaint before her explicitly stated that plaintiffs did not rely on the Alien Tort Claim Act, 28 U.S.C. § 1350 ("ATCA"), but relied instead on federal common law, predicating the Herero's claims on defendants' violations of civil *jus cogens* norms.[1]  Plaintiffs argued to Judge Kollar-

---

[1]*Jus cogens*, in Latin, means "compelling law," and is defined in Black's Law Dictionary as a "mandatory or peremptory norm of general international law accepted and recognized by the international community as a norm from which no derogation is permitted"; in civil law, it is termed a

3

Kotelly that these violations "are the embodiment of evil" such that "every nation is obligated to

punish those responsible."  Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at 8,

The Herero People's Reparations Corporation v. Deutsche Bank AG, No. 01-1868 (D. D.C. April

30, 2002).  Hence, according to plaintiffs, federal jurisdiction arose.

In a careful analysis of D.C. Circuit law, Judge Kollar-Kotelly found that precedent in the

D.C.  Circuit "clearly counsels against recognizing a cause of action for violations of

international law in the absence of a federal statute." The Herero People's Reparations

Corporation v. Deutsche Bank AG, No. 01-1868, mem. op. at 16 (D. D.C. July 31, 2003) (interim

memorandum opinion granting defendant Deutsche Bank's motion to dismiss).  The court then

examined decisions of other federal courts and reviewed the Restatement of Foreign Relations

Law of the United States, and found that authority also failed to support plaintiffs' contention

that they could assert a private cause of action for violations of international law.  Judge Kollar-

Kotelly concluded:

> Given that the District of Columbia Circuit does not appear to recognize a
> private right of action for violations of international law; numerous federal
> courts, passing directly on this question, have declined to infer a private
> right of action in the absence of a federal statute; and the Restatement of
> Foreign Relations Law fails to support such a proposition, the Court is left
> to conclude that Plaintiffs have failed to present a valid cause of action.
> Accordingly, Plaintiffs have failed to state a claim upon which relief can
> be granted, and the Court will dismiss their Amended complaint pursuant
> to Federal Rule of Civil Procedure 12(b)(6).

Id. at 21.

After making this ruling, Judge Kollar-Kotelly considered plaintiffs' desire to amend, which

---

"peremptory norm."  Black's Law Dictionary (8th ed. 2004).

was briefly referred to in their opposition as something they sought to do "in the event the Court

determines that the Complaint fails to satisfy the requirements of Rule 8 or Rule 12."  In the

absence of a formal motion, and because the motion to dismiss put plaintiffs on notice regarding

the potential deficiencies in the pleadings, the district court found that this bare request in the

opposition should not be deemed a Rule 15(a) motion, and dismissed the complaint.  Plaintiffs

appealed to the D.C. Circuit.  There, as Circuit Judge Randolph noted in writing for the appeals

court, the Herero

> seek to convince us their claim had far less merit than the district court
> believed; that it was, in fact, so insubstantial that federal question
> jurisdiction did not exist.  A ruling to this effect would send the case back
> to the Superior Court of the District of Columbia where it began and
> would, appellants hope, prevent preclusion of a nearly identical complaint
> they filed in the Southern District of New York.

The Herero People's Reparations Corporation v. Deutsche Bank AG, 370 F.3d 1192, 1193 (D.C.
Cir. 2004).

Specifically, the basis for appeal was the Herero's argument that Judge Kollar-Kotelly did not

have jurisdiction to hear the case.  So the appeals court considered whether the Herero were

asserting federal claims in their complaint, and determined they were.

> Several factors indicate that the Herero were asserting federal claims.
> First, international law was the only law the complaint accused the
> defendants of violating.  Such claims would only be cognizable under
> federal law.  Second, in their motion to remand, the Herero did not deny
> they were asserting federal claims, and they did not suggest any non-
> federal claims they might otherwise be asserting.  Third, in their
> oppositions to the motions to dismiss, the Herero explicitly asserted that
> their claims were founded on federal common law or international law.
> They presented no non-federal theories.

Id. at 1194.

Still considering the propriety of the removal on the basis of federal jurisdiction, the appeals

court held that the complaint "also stated an arguable claim" under ATCA.  Id. at 1195.  Having

thus found that the complaint "stated a nonfrivolous federal claim under one theory or another" –

that is by asserting either a private cause of action for violations of customary international law

or an action arising under the ATCA –  the D.C. Circuit affirmed.  Id.

Significantly, in affirming Judge Kollar-Kotelly's determination that she had subject matter

jurisdiction,  the appeals court did not address her reasons for granting the motion to dismiss for

failure to state a claim.  On that substantive issue, the appellate opinion says only that whether

federal common law should provide a private cause of action for violations of customary

international law is something that the D.C. Circuit "has not embraced," noting that the Supreme

Court had yet to rule on the subject and the theory has support in certain court decisions and law

review articles.  Id. at 1195.  Regarding the applicability of the ATCA, the appeals court noted

that "this court has not decided exactly what the Alien Tort Act means."  Id.  Thus, the

affirmance is conclusive on the existence of federal claims and finds that without a doubt, the

Herero have filed a lawsuit that belongs in federal court, but the decision makes no conclusions

about whether the district court properly dismissed the claims.  Based on the way the appeal was

framed, the appeals court was not obligated to reach that issue.

What the D.C. Circuit was very sure about is that Judge Kollar-Kotelly's Rule 12(b)(6)

determination would not help Woermann.  In a footnote, the appeals court noted that when the

district court dismissed the complaint, Woermann was no longer a party.  Thus, the finding that

the Herero had failed to state a claim upon which relief could be granted "has no effect on its

dispute with the Herero.  If Woermann Line wanted to enjoy the possible preclusive effects of the

12(b)(6) dismissal, it should have waived lack of personal jurisdiction."  Id. at 1196 n.3.

6

In this motion to dismiss the within complaint, Woermann argues that the federal law of claim preclusion, or *res judicata*, bars a subsequent suit based on the same cause of action where there is a final judgment on the merits in a prior suit that involves the same parties or their privies. (Defendant's Moving Brief at 16, citing <u>Lubrizol Corp. v. Exxon Corp.</u>, 929 F.2d 960, 963 (3d Cir. 1991).)  Not surprisingly, in their opposition plaintiffs beard Woermann with the footnote from the D.C. Circuit discussed above.  And they point out as well that when the case was argued on appeal, and the court inquired if Woermann "wanted back in" should the case be deemed an alien tort act case, Woermann declined. (Plaintiff's Opposition Brief at 24.) Plaintiffs also argue, correctly, that the D.C. Circuit did not actually address their right to assert a claim based on international law under either federal common law or the ATCA.  As a consequence, the procedural landscape does not present an appropriate setting for the argument, let alone a ruling in favor, of *res judicata.*

This Court is not persuaded by Woermann's collateral estoppel argument that these plaintiffs had an opportunity to raise the ATCA before Judge Kollar-Kotelly and explicitly declined to do so, and thus should be barred. (Defendant's Moving Brief at 17. ("[P]laintiffs' ATCA claim could, and should, have been raised in the D.C. action, but cannot be relitigated here."))  Careful attention to what happened in the federal courts in the D.C. Circuit, both trial and appellate, indicates that plaintiffs would have nullified their remand argument if they asserted a claim arising under a federal statute.  This Court is not inclined to stretch that strategic decision into an abandonment of a statutory basis for what, as the D.C. Circuit recognized, might constitute a non-frivolous federal claim.  Likewise, Woermann's argument that its interests were fully aligned with Deutsche Bank and thus it should get the benefit of the district court's 12(b)(6) ruling

7

conveniently ignores that the D.C. Circuit offered Woermann "in" on precisely the issue raised

here – the plaintiffs' ability to assert an action under the ATCA – and Woermann opted "out."

That collateral estoppel can be found on those procedural facts is something this Court just

cannot accept.

The motion to dismiss is denied on grounds of *res judicata* and/or collateral estoppel.

Do these Plaintiffs Lack Standing and Is the Complaint Time-Barred?

*(A) Standing*

In support of its standing arguments, Woermann cites to the test set forth in Lujan v.

Defenders of Wildlife, 504 U.S. 555 (1992), where the Supreme Court held that for an individual

to demonstrate standing he must meet the following three-part test.  (Defendant's Moving Brief

at 18.)  First, he must have suffered an injury in fact that is "concrete and particularized" and

"actual or imminent."  Lujan, 504 U.S. at 560.  Second,  the injury must be causally connected to

the conduct complained of.  Id.  Third,  it must be likely that a favorable decision will redress the

injury. Id. at 561.  Here, Woermann contends that the individual tribe members have failed to

establish that they have suffered a direct personal injury because not one of them was alive when

the alleged wrongs took place, and because there is no allegation "that any individual defendant

is the heir or assign of any Herero who was purportedly injured by defendant during that period."

(Defendant's Moving Brief at 19.)

The Herero argue that based on cultural and sociological traditions and notions of ancestry,

the individual plaintiffs' tribal origin is sufficient to establish standing.  For this proposition, the

Herero rely on the declaration of 86 year old Kandjanatozombua Tjiho, who states that he and

many of the Herero lost family, possessions, and lands during German occupation.  The Herero

also rely on Judge Kollar-Kotelly's opinion, where she states that "[a]t the pleading stage, Individual Plaintiffs have satisfied their burden.  Individual Plaintiffs have alleged both personal injuries and injuries to their heirs, successors or assigns, purportedly under South African law." The Herero People's Reparations Corporation v. Deutsche Bank AG, No. 01-1868, mem. op. at 13 (D. D.C. July 31, 2003) (interim memorandum opinion granting defendant Deutsche Bank's motion to dismiss).   The admissibility of  Kandjanatozombua Tjiho's declaration is in dispute, but this Court agrees with Judge Kollar-Kotelly that at the pleading stage these plaintiffs have provided enough in their complaint to find individual standing, and is not inclined to dismiss on grounds of lack of individual standing.

As to the argument that the tribe itself lacks the requisite associational standing to sue, Woermann relies on Clark v. McDonald's Corp., 213 F.R.D. 198 (D.N.J. 2003), where Judge Kugler held that an association will have standing to sue "on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 207 (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).  Woermann claims that since the individual plaintiffs lack standing to sue in their own right, the tribe fails the first prong of the associational standing test.  In addition, Woermann argues, since the plaintiffs seek monetary relief, individual members must participate in order to establish their injuries.  Since individual members must participate, Woermann continues, the tribe also fails the third prong of the associational standing test.  (Moving Brief at 19-20, quoting Pennsylvania Psych. Soc'y v. Green Spring Health Servs., Inc., 280 F.3d 278, 284 (3d Cir. 2002) ("Because claims for

monetary relief usually require individual participation, courts have held associations cannot generally raise these claims on behalf of their members.").)  In response, the Herero claim that because its individual members have standing to sue, then the Herero tribe also has standing to sue.  (The Herero did not respond in their papers to Woermann's contention that the Herero's claim for monetary relief precludes a finding of associational standing.)

The Court has already found that the plaintiffs have provided enough in their complaint to find individual standing at this point, sufficiently meeting the first prong of the associational standing test.  As to the third prong and Woermann's argument that the claim for monetary relief precludes a finding of associational standing, the Court notes that the Supreme Court, in United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,  517 U.S. 544 (1996), reversed the 8th Circuit's holding that the suit was barred because the union failed to meet the third prong of the associational standing test, stating that "the associational standing test's third prong is a prudential one" that focuses on "matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution."  Id. at 555, 557.   A prudential rule is one of  "judicial self-governance [that] is subject to exceptions, the most prominent of which is that Congress may remove it by statute."  Warth v. Seldin, 422 U.S. 490, 509-510 (1975).  Therefore, the Court cannot agree with Woermann's contention that the plaintiffs' prayer for monetary damages *automatically* precludes associational standing.  Neither party has briefed whether an exception is appropriate here.  In light of the Court's further analysis, *infra*, this omission is not of great moment, other than to make the Court disinclined to dismiss the complaint on grounds of lack of associational standing.

10

*(B) Timeliness*

   Because the alleged wrongs occurred between 1890 and 1915, Woermann argues that the Herero's claim under the ATCA must be dismissed as untimely.  Woermann contends that the claims accrued no later than 1915 because "[o]rdinarily, a statute of limitations begins to run when all elements of a cause of action are present or, more plainly, 'from the moment of the wrong.'" (Defendant's Moving Brief at 6 (quoting Michaels v. N.J., 955 F.Supp. 315, 326 (D.N.J. 1996) (Barry, J.) (quoting Lopez v. Sawyer, 62 N.J. 267, 274 (1973)).)  Since the Herero filed their claim 90 years after the time period of alleged conduct ended, Woermann argues that no applicable statute of limitations can save the complaint from being time barred.

Construing the cause of action as arising under the ATCA, Woermann notes, correctly,  that this statute does not have a statute of limitations.   Under those circumstances,  federal courts must apply the statute of limitations of the most closely analogous state statute, DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158 (1983), except when another federal statute or rule "clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make the [federal statute or rule] a significantly more appropriate vehicle for interstitial lawmaking."  Id. at 172.  See also United Steelworkers of America v. Crown Cork & Seal Co., Inc., 32 F.3d 53, 56-57 (3d Cir. 1994).  In this District, Judge Greenaway held in  Iwanowa v. Ford Motor Co., 67 F.Supp.2d 424, 462 (D.N.J.,1999) that the ten year statute of limitations of the Torture Victim Protection Act ("TVPA") "provides a closer analogy [to ATCA] than the available state statutes."   Judge Debevoise came to the same conclusion in Jama v. I.N.S., 343 F.Supp.2d 338, 365-66 (D.N.J. 2004), even though the Supreme Court had recently decided Sosa v. Alvarez-Machain, 542 U.S.

11

692 (2004) and appeared to offer a different construction of the ATCA than had previously been used to link it to the TVPA.  He reasoned as follows:

> Public policy suggests that "borrowing" the TVPA's 10 year statute of limitations period is still the correct way to go. Consequently, while *Sosa* does serve to limit the breadth of the claims eligible under the ATCA, that narrow reading does not influence the application of the TVPA 10 year statute of limitations.
>
> The reason behind the courts' initial decision to change the ATCA's statute of limitations after the passing of the TVPA was to increase the fairness to the claimants trying to bring suit. As plaintiffs state in their brief, aliens bringing claims under the ATCA face greater obstacles than typical plaintiffs in tort suits and are therefore put at a disadvantage by such a short statute of limitations period as New Jersey's two year limit. Some of these hindrances are difficulties of gathering evidence sufficient to support a complaint; unavailability or hesitation of witnesses who may fear reprisal by a corrupt regime; other delays caused by ongoing human rights violations.

343 F.Supp.2d at 366 (D.N.J. 2004).

None of the acts alleged by the Herero has a statute of limitation in excess of 10 years under New Jersey law.  The statute of limitations under N.J.S.A. § 2A:14-2 is two years for negligence; N.J.S.A. § 2A:14-1 has a statute of limitations of six years for trespass or conversion; N.J.S.A. § 2A:14-1 has a statute of limitations of six years for unjust enrichment; and the statute of limitations under N.J.S.A. § 2A:31-3 is two years for wrongful death.  Therefore, TVPA at 10 years has the longest applicable statute of limitations.

The Herero do not dispute that the 10 year statute of limitations set forth in TVPA applies to claims under ATCA.  Rather, they assert that crimes against humanity should not have the protection of any statute of limitations, and alternatively, that equitable tolling should apply.  As to the first argument, none of the authority the Herero rely on holds that no statute of limitations

12

exists for claims of *jus cogens*.  Significantly, where the Herero cite In re Agent Orange Product Liability Litigation, 373 F.Supp.2d 7 (E.D.N.Y. 2005) for the proposition that war crimes should not have a statute of limitations, that case recognizes that an exception arises for claims related to the TVPA.  Id. at 63.

As to their other argument, the Herero have the burden of proving that the statute of limitations must be tolled.  Baker v. Monroe Twp., 50 F.3d 1186, 1190 (3d Cir. 1995).  Adopting the longest statute of limitations of 10 years, which this Court finds is the appropriate limitations period, Woermann argues that the Herero's ATCA claim expired in 1925, and that under Knight v. Brown Transport Corp., 806 F.2d 479 (3d Cir. 1986),  the Herero are not entitled to a tolling that extends over the past 80 years.  In Knight the Third Circuit held that equitable estoppel "will not be invoked against a defendant when the plaintiff has been less than diligent in pursuing and pressing his claims. . . . Nor will it be applied where no fraudulent or deceitful misrepresentations precluded suit, or where the legislative purpose of the statute of limitations is not furthered."  Id. at 487.

In response, the Herero argue that "extraordinary impediments" precluded them from asserting their claims over the past eighty years.  In support, they rely on Hanger v. Abbott, 73 U.S. 532 (1867) and its progeny for the proposition that tolling an applicable statute of limitations is warranted when it is physically impossible for a litigant to obtain access to the courts.  Hanger, 73 U.S. 532 (holding that a congressional decree closing access to the courts during the Civil Was tolled any statute of limitations if the cause of action arose before the decree was issued); U.S. v. Wiley, 78 U.S. 508 (1870) (same);  The Protector, 76 U.S. 687 (1869) (holding that Hanger rationale applied to time limits for appeals);  Osboume v. U.S., 164

F.2d 767, 768 (2d Cir. 1947) (holding that tolling a statute of limitations is proper for a prisoner of war because "the courts were unavailable to him as a prisoner in the hands of the enemy"). The Herero apply this line of cases not to claim that they literally could not get physical access to the courts, but rather that they were prevented from obtaining relief sought here because of a fear of reprisal due to an oppressive regime, citing federal cases in California. However, in those cases, the courts only tolled the ten year statute of limitations under the ATCA during the time in which the oppressive regime or dictator was in power.  See Forti v. Suarez-Mason, 672 F.Supp. 1531, 1550 (N.D. Cal. 1987) ("Plaintiffs claim that it was impossible for them to gain relief for defendant's wrongdoing in the courts of Argentina from the time their claims accrued until the democratically-elected government assumed power.");  Doe v. Unocal Corp., 963 F.Supp. 880, 897 (C.D.Cal. 1997) ("[P]laintiffs [sic] claims should be tolled as long as SLORC remains in power and plaintiffs are unable to obtain access to judicial review."), and Hilao v. Estate of Marcos, 103 F.3d 767, 773 (9th Cir. 1996) ("Any action against Marcos for torture, 'disappearance,' or summary execution was tolled during the time Marcos was president.").  The Herero offer the declarations of Paramount Chief Kuaima Riruako, Professor Mburumba Kerina, and Kandjanatozombua Tjiho, to establish that over the years, "extraordinary impediments" can be gleaned from historical events described by the declarants, none of whom was born before 1915.

In its moving brief, Woermann argues that those declarations cannot be considered on a motion pursuant to Rule 12(b)(6), relying on Prager v. Knight Trading Group, Inc., 250 F.Supp.2d 412, 416 (D.N.J. 2001) ("When considering a 12(b)(6) motion, a district court may not consider any material beyond the pleadings, but may properly refer to factual allegations

contained in other documents (such as documents referred to in the complaint and matters of public record) if the plaintiff's claims are based on those documents.").   Woermann also challenges the declarations because they are not based on personal knowledge, citing <u>KOS Pharmaceuticals, Inc. v. Andrx Corp.</u>, 369 F.3d 700, 718-19 (3d Cir. 2004).

Aside from creating in motion practice precisely the sort of proof problems this Court will allude to in determining whether plaintiffs' cause of action must be dismissed for failure to state a valid claim, the certifications, if accepted, also require the Court to delve into historical documents and events in order to evaluate whether plaintiffs have established sufficiently "extraordinary impediments" to toll the statute of limitations 80 years.   This is a determination fraught with practical problems.   For example, plaintiffs take defendant to task in their opposition for "sniping" at one declarant's knowledge of historical events. (Plaintiff's Opposition Brief at 16 n.12.)   But this underscores the remoteness of the declarant's personal knowledge.   It is one thing for a judge to scrutinize a record, as Judge Debevoise did in <u>Jama v. I.N.S.,</u> to see whether alleged events fell within a 10 year or two year limitations period, and reject equitable tolling because discrete events were plainly not part of a continuing pattern or plainly occurred at a specific time.   It is another matter entirely for a court to rely on history books, personal reminiscences that allegedly mirror the experiences of others, and the professional competence of a history professor to support equitable tolling because no other factual support is available.   As Judge Debevoise observed, the more generous 10 year limitations period imputed to the ATCA permits alien plaintiffs to bring timely claims despite hindrances such as "difficulties of gathering evidence sufficient to support a complaint; unavailability or hesitation of witnesses who may fear reprisal by a corrupt regime; other delays caused by ongoing human rights violations." <u>Jama v.</u>

15

I.N.S., 343 F.Supp. at 366.  This is instructive: inherent in the analysis is the assumption that the alien is complaining of *continuing* human rights violations, and that the obstacles created by fear of reprisal are accommodated by a 10 year limitations period.  Nothing in that recognition of the difficulties faced by alien plaintiffs who were subject to *ongoing* human rights violations suggests that they needed nearly a century to bring their claims.

Indeed, the judicial exercise plaintiffs propose as part of their equitable tolling argument directly raises one aspect of the justiciability issue defendant asserts in support of dismissal – the lack of manageable standards.  Just how do these plaintiffs go about proving their case without witnesses speaking from direct knowledge?  In short, as the party with the burden of proof, these plaintiffs are massively burdened by how much time has passed since the Herero suffered the wrongs complained of, and this Court is not satisfied that they have come close to meeting the limitations argument.  But even if this lack of timeliness were deemed not to be fatal, it demonstrates a basic weakness in the complaint that in this Court's estimation forms the most compelling basis for dismissal:  failure to raise a valid federal claim under the ATCA or federal common law.

Does the Complaint Fail to State a Claim upon which Relief Can Be Granted?

When considering a motion to dismiss pursuant to Rule 12(b)(6), this Court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  A Rule 12(b)(6) motion to dismiss will be granted "if it appears to a certainty that no relief could be granted under any set of facts which

could be proved." Morse, 132 F.3d at 906.

   (A) Do plaintiffs state a cause of action under the ATCA?

   Recalling that the D.C. Circuit did not actually "pull the trigger" on whether the Herero had

raised valid federal claims in the D.C. action, this Court notes that at the time of the appeal,

everyone knew that Sosa v. Alvarez-Machain, 542 U.S. 692 (2004), was pending before the

United States Supreme Court.  Reason enough, one must conclude, for deciding only the issue

raised by the appellants and keeping hands off the ATCA claim.

   Sosa has now been decided, and the Supreme Court finally did provide assistance to the

federal courts in figuring out what the ATCA means, cf. The Herero People's Reparations

Corporation, 370 F. 3d at 1195, by tracing the history of the statute and construing it as operating

in a tightly restricted context.  In its entirety, the ATCA provides that "[t]he district courts shall

have original jurisdiction of any civil action by an alien for a tort only, committed in violation of

the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  Although there was a

concurring opinion in Sosa written by Justice Scalia, who was joined by Chief Justice Rehnquist

and Justice Thomas, all members of the Court agreed that § 1350 is "only jurisdictional."  Sosa,

542 U.S. at 729.  Writing for the majority, Justice Souter identified several considerations that

"argue for great caution in adapting the law of nations to private rights."  Id. at 728.  Eventually,

the Court examined Sosa's claim, and held that permitting him to bring a civil action against the

named defendants  for violating the law of nations as he defined it,

             would create an action in federal court for arrests by state officers who
             simply exceed their authority; and for the violation of any limit that the
             law of any country might place on the authority of its own officers to
             arrest. And all of this assumes that Alvarez could establish that Sosa was

acting on behalf of a government when he made the arrest, for otherwise
he would need a rule broader still.

Id. at 737.

This Court is not persuaded that the Sosa decision forecloses plaintiffs' reliance on the

ATCA based on a failure to exhaust remedies or because the gravamen of the complaint does not

arise out of piracy, violation of safe conducts, or infringement of the rights of ambassadors,

wrongs arising out of international law at the time the ATCA was enacted by the First Congress.

Albeit the Sosa majority examines these considerations as grounds for the extreme caution

imposed on federal courts asked to entertain a claim under the ATCA, the opinion does not make

any of them dispositive nor a basis for why it dismissed Sosa's ATCA claims.  Instead, it appears

that Sosa requires a federal court to be wary; to be extremely vigilant about the impact of a

private cause of action grounded in normative international law, on foreign policy and foreign

relations; and to require a plaintiff to demonstrate that the claimed violation offends "a norm of

customary international law so well defined as to support the creation of a federal remedy."  Id. at

738.

It is on meeting this last requirement, a requirement that subsumes much of the basis for the

cautionary tone of Sosa, that this complaint founders.  There is no doubt that the atrocities

perpetrated against the Herero people that are described in the complaint constitute crimes

against humanity, offensive to the law of nations.  But these plaintiffs must contend with

daunting problems in meeting the fundamental demands of litigation.  For example, there is the

amount of time that has passed since these acts occurred, then the difficulty of identifying

through witnesses who exactly committed them, which persons suffered them,  how plaintiffs

have the right to assert those victims' rights, and even how damages might be apportioned  – issues of timeliness and justiciability that are pressed by defendant in this motion as individual bases for dismissal.  Even straining to give plaintiffs the benefit of the doubt on these otherwise quite compelling arguments for dismissal, this Court is convinced that the presence of such fundamental trouble undoes the structural soundness of the ATCA claim and renders it ill-defined and unsuitable to support the creation of a federal remedy under the restrictions set down in Sosa.  It must be remembered that Sosa was barred from bringing his ATCA claim in part because this would create a cause of action for any seizure of an alien in violation of the Fourth Amendment, and in effect supplant Bivens and federal civil rights statutes such as 42 U.S.C. § 1983.  Sosa, 542 U.S. at 736-37.  It is not a great leap of logic to conclude that these plaintiffs are equally barred from suing Woermann when their claims accrued in 1915, when they have not pled any action on Woermann's part that would show interference with their opportunity to seek legal redress or fraudulent concealment of their conduct, and when they have failed to provide persuasive arguments in their opposition on how they plan to establish causation and generally offer proofs in support of their claims.  Put another way, plaintiffs' private cause of action, if pursued, would mean that an historical grievance, brought before the factfinders some 90 years after the time period ended  by means of historical documents rather than live testimony,  meets the rigors of subjecting a tort claim to the adversary system with its principles of timeliness, standing, and its observance of the law of evidence.  It is not likely that a norm of customary law can emerge from such a process sufficiently well-defined to support the creation of a federal remedy.

*(B) Do Plaintiffs State a Cause of Action under Federal Common Law?*

The same analysis that forecloses the viability of the plaintiffs' ATCA claim applies to foreclose any residual basis for relief asserted in the complaint arising out of federal common law (which would be the same cause of action asserted in the D.C. action). Aside from the problems of proof and causation, building a case for a private cause of action for violation of *jus cogens* norms of international law in the absence of a federal statute, when there exists a federal statute that has been defined as narrowly and rigorously as the ATCA, is an exercise in futility and, to their credit, plaintiffs have devoted only a small portion of their opposition to the proposition. This Court agrees with them that neither <u>Sosa</u> nor the D.C. Circuit's decision forecloses the possibility that such a cause of action still may be recognized by a federal court, but the authority plaintiffs rely on at best holds only that federal courts have the authority to imply the existence of private rights of action in this arena. Such recognition does not confer on these plaintiffs an alternative to relief under the ATCA on the claims they raise in their complaint.

Because the Court determines that the complaint does not raise claims upon which relief can be granted, it is not necessary to address the issue of non-justiciability because the claims arise out of war, run counter to foreign policy decisions with respect to South West Africa, or are unmanageable under conventional standards for adjudication. However, these arguments – particularly the first two – provide additional support to the conclusion that <u>Sosa</u> compels dismissal of the ATCA claim. As Justice Souter writes after discussing the potential for harm in too easily granting a private cause of action for violations of international law, "the subject of those collateral consequences is itself a reason for a high bar to new private causes of action for violating international law, for the potential implications for the foreign relations of the United

20

States of recognizing such causes should make courts particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs." <u>Sosa</u>, 542 U.S. at 727.

Because the complaint does not raise a valid cause of action under the ATCA or federal common law, defendant's motion to dismiss will be granted.   While the Court has concluded that this deficiency provides the preferable substantive ground for dismissal, the statute of limitations also provides an alternative basis for dismissal.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is **granted** and the complaint is dismissed.  Plaintiffs have argued here, as they did in the D.C. action, that should defendant prevail, they are entitled to amend the complaint.  Judge Kollar-Kotelly referred to well-developed D.C. Circuit law that provides repercussions on plaintiffs who seek to avoid a dismissal by raising the prospect of an amendment to the complaint in the opposition**,** rather than filing a formal motion.  The reasoning is, simply, that the motion to dismiss offers ample notice of deficiencies that should render meritless a bare suggestion that an amendment is in the offing. There is even more reason now, after all concerned have endured another full round of motion practice,  for rejecting the notion that a dismissal is not proper because plaintiff can amend in some unspecified manner.  A separate order will be entered directing the Clerk of the Court to enter dismissal and close this case.


Dated: January 17, 2006                          s/ Katharine S. Hayden_____

                                                          Katharine S. Hayden, U.S.D.J.